G. W. Hogan *et al.*

*v.*

Walter M. Akin.

*Opinion filed October 19, 1899.*

1. STATUTES—*principle of statutory construction stated.* It depends upon the intention of the legislature whether a thing within the letter is within the statute, and in seeking for such intention not only the language used is to be considered, but also the evil to be remedied and the object to be attained.

2. SAME—*in case of doubt courts prefer a construction favoring validity.* In determining the legislative intent, in case of doubt or ambiguity an interpretation which holds the statute a valid enactment will be upheld, instead of one which would necessitate holding the provision in question invalid, as not embraced in the title.

3. MORTGAGES—*effect where the note fails to state that it is secured by chattel mortgage.* A chattel mortgage is not void, under section 1 of

the Chattel Mortgage act of 1895, (Laws of 1895, p. 260,) for failure of the note to state upon its face that it is secured by a chattel mortgage, unless the note has been assigned.

4. SAME—*right of mortgagee to take possession under insecurity clause is not an arbitrary one.* The discretion vested in a chattel mortgagee under the insecurity clause is not an arbitrary one, but he must exercise his judgment in good faith, and have such grounds for feeling himself unsafe as amount to probable cause.*

5. EVIDENCE—*what may be shown in defense of taking mortgaged chattels under insecurity clause.* In replevin to recover chattel mortgage property taken under the insecurity clause in the mortgage, the mortgagee may show that probable cause existed for believing his debt unsafe and insecure.

*Thompson* v. *Akin,* 81 Ill. App. 62, reversed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Franklin county; the Hon. E. D. YOUNGBLOOD, Judge, presiding.

C. H. LAYMAN, and W. S. CANTRELL, for appellants:

Where a chattel mortgage is given on personal property, or where any lien is given on personal property as a security for a debt, and the mortgagee or creditor becomes unsafe or insecure, he may take possession of the chattels mortgaged or pledged in order to secure his debt. *Roy* v. *Goings,* 96 Ill. 361; *Bailey* v. *Godfrey,* 54 id. 507; *Grady* v. *Smith,* 14 Ill. App. 305.

Notwithstanding our Chattel Mortgage act, defining how chattel mortgages must be executed and acknowledged, it has uniformly been held by our courts that a chattel mortgage, as between the mortgagor and mortgagee, is good without acknowledgment or record, which was sustained upon the theory that they were simply contracts.    *Griggs* v. *Sanford,* 24 Ill. 17; *Foster* v. *Pinkham,* 29 id. 141; *Griffin* v. *Wertz,* 2 Ill. App. 487; *McDowell* v. *Stewart,* 83 Ill. 538.

---

*The effect of a "danger," "safety" or "insecurity" clause in a chattel mortgage is discussed in a note to *Robison* v. *Gray,* (Iowa,) 23 L. R. A. 780.

A chattel mortgage is but a conditional sale, and when the mortgagor fails to perform the conditions, the title to the property mortgaged, so far as it is held by the mortgagor, vests in the mortgagee, and where possession is taken according to the terms of the mortgage the title passes though the debt is not due. *Durfee* v. *Grinnell,* 69 Ill. 371; *Grady* v. *Smith,* 14 Ill. App. 305; *Jefferson* v. *Barkto,* 1 id. 568.

HART & SPILLER, for appellee:

Any chattel mortgage securing notes which do not state upon their face the fact of such security shall be absolutely void. Hurd's Stat. 1895, par. 25, p. 1105.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The circuit court of Franklin county entered judgment on the verdict of a jury in favor of Walter M. Akin, appellee, against Richard Thompson and W. B. Martin, in an action of replevin for the possession of the property, together with $85 damages for its detention and costs of suit. The defendant Thompson removed the record by appeal to the Appellate Court for the Fourth District, but died while the appeal was pending, and appellants, as administrators of his estate, were substituted for him. The Appellate Court affirmed the judgment of the trial court and granted a certificate of importance, in pursuance of which the case is brought to this court.

On January 30, 1897, Akin executed to Thompson his note for $110, due in five months, and secured the same by a chattel mortgage on the property in controversy. The mortgage provided that the mortgagor might retain possession of the property until default in payment, but contained the usual insecurity clause, stipulating that if the mortgagee should, at any time before the note became due, feel unsafe or insecure, he should have the right to take possession of the property and advertise

and sell it to pay the debt. In the latter part of April, 1897, Thompson, by virtue of that clause, authorized his co-defendant, Martin, a constable, to take possession of the property as his agent and advertise and sell it, for the purpose of collecting the debt. Martin took the property by virtue of the mortgage and his agency, and this replevin suit followed. The defense made at the trial was that the possession was rightfully taken in pursuance of the provisions of the chattel mortgage, in good faith, for the sole purpose of collecting the debt.

At the time the note was made and delivered it did not recite upon its face that it was secured by chattel mortgage. The note and mortgage were written by a justice of the peace, and the note was afterward sent to him, and he endorsed upon it, "This note is secured by chattel mortgage." The trial court, by sustaining demurrers to pleas, adopted the theory that the mortgage was void between the parties to it, and that the defendants had no rights under it, on account of the failure to make such recital. The court also, by the third instruction, took the same ground, and directed the jury to find for the plaintiff, unless they believe, from the evidence, that the words in question, stating that the note was secured by chattel mortgage, were on the face of the note at the time the mortgage was executed, or that plaintiff consented to and ratified the act of putting said words on said note.

To determine whether the court was right on that question involves the construction of section 1 of an act entitled "An act to regulate the assignment of notes secured by chattel mortgages, and to regulate the sale of property under the power of sale contained in chattel mortgages," in force July 1, 1895. (Laws of 1895, p. 260.) The second section of that act regulates the sale of property under the power of sale contained in chattel mortgages and covering that branch of the title. Section 1 is the only portion of the act which relates in any way to the assignment of notes so secured or which is claimed

to have any bearing on the subject under consideration. That section is as follows:

"*Be it enacted by the People of the State of Illinois, represented in the General Assembly,* That all notes secured by chattel mortgages shall state upon their face that they are so secured, and when assigned by the payee therein named, shall be subject to all defenses existing between the payee and the payor of said notes the same as if said notes were held by the payee therein named, and any chattel mortgage securing notes which do not state upon their face the fact of such security shall be absolutely void."

It is argued in support of the holdings of the trial and Appellate Courts, that here is a plain and unambiguous provision of the statute that a chattel mortgage like this one is absolutely void. It is true, we cannot disregard a provision of that kind appearing to be within the intention of the law-makers, but the purpose of construction is to find and give effect to such intention, and a thing which is within the letter is not within the statute unless within such intention. (*Perry County* v. *Jefferson County,* 94 Ill. 214.) In seeking for such intention we are to consider not only the language used by the legislature, but also the evil to be remedied and the object to be attained. (*Soby* v. *People,* 134 Ill. 66; *Bobel* v. *People,* 173 id. 19.) Considering only the language of the enactment, we do not regard it as clear that the legislative intention was to make chattel mortgages void between the parties for a failure to give notice upon the note that it is secured by mortgage. The provision may as readily be construed to apply only when the condition exists which precedes such provision and such notes have been assigned by the payee therein named. The section requires notice upon the face of the notes, and provides that when assigned they shall be subject to defenses, and if they do not contain the notice the chattel mortgage shall be void.

There are other considerations which forbid any other interpretation. One of these arises out of the title of the act. The title was formerly considered no part of the act, and yet it might be resorted to to enable the court to discover the intent, wherever such intent was doubtful or ambiguous. (*Perry County* v. *Jefferson County, supra; Cohn* v. *People*, 149 Ill. 486.) Under the constitutional provisions now in force the title has considerable importance. Section 13 of article 4 of the constitution requires that the title shall show the object of the law, and makes such title controlling over the body of the act, by declaring the act to be void as to any subject which is not expressed in the title. An act can only be sustained as to the subject expressed in the title, and all other subjects are to be rejected. (*People* v. *Nelson*, 133 Ill. 565; *Snell* v. *City of Chicago*, id. 413.) Now, the title in this case does not relate to chattel mortgages generally, but to particular branches of the law governing such securities, which are, the assignment of notes secured by chattel mortgages and the sale of property under powers of sale. To hold that the legislature intended to regulate chattel mortgages generally, and the rights of parties, where no assignment was in any way involved, would necessitate holding the provision in question invalid, as not embraced in the title, and, of course, the act should be construed as a valid enactment, if that end can be accomplished.

All other considerations tend to the same conclusion. It has never been the policy of the law to abridge the rights of parties to contract with each other in such manner as may suit their convenience, where the contract is not against the public interests or the rights of third persons, and we would not readily ascribe to the legislature an intention to so interfere with the right to contract. Under the law a chattel mortgage has never been assignable so as to vest the legal title in the assignee, and the mortgage is subject to defenses in the hands of such assignee. The note, however, could be transferred before

maturity so as to cut off defense, and the object of the act is to destroy the negotiability of notes of that class, so that, in case of an assignment, the assignee would not have rights that the payee did not have. The words to be put upon the note are not words of contract, and the only object the legislature could have had, and the only purpose they could serve, would be to give notice. The assignment of a note secured by chattel mortgage would formerly carry with it the security, but the legislature, to effect its object, provided that there should be notice on the face of the note of its character, and if transferred it should be subject to the defenses, and if there was a failure to give such notice the assignment of the notes should not carry such security which should be void. As between the parties, the defense could be made before this enactment, and all their rights were fully protected. The parties were already notified, and the legislature could not have intended to provide notice for those who already had it. There is no occasion for any legislation protecting the original parties, but there was reason for protecting parties in case of an assignment.

Considering the language used, the evil to be remedied and the object to be attained, it must be held that a mortgage is void for a failure to make the required statement only when such note has been assigned. It follows, that the rulings of the trial court on that subject were wrong.

The trial court also prevented the defendants from proving that ground existed for taking possession of the property under the insecurity clause. The defendant Martin, who took possession of the property, was asked where he found it; whether Akin had traded it off or became dispossessed of it, and what he knew of Akin having sold or disposed of any of it, and the court sustained objections to all these questions. This was wrong; but having excluded the evidence of the ground upon which Thompson acted in directing the constable to take the property, the court gave this instruction:

"Unless you believe, from a preponderance of the evidence, that the note secured by the mortgage in evidence was due, or that defendant Thompson had good cause to feel himself unsafe or insecure, that then the taking was tortious and void, and you should find for plaintiff, and assess his damages at whatever sum shown by the evidence."

The court gave a further instruction that the jury should find for the plaintiff unless they believed, from the evidence, that a reasonable man would have believed himself unsafe or insecure at the time. The rule on that subject is, that the discretion given to the mortgagee is not an arbitrary one, but he must exercise his judgment in good faith, and must have such grounds for feeling himself insecure as amount to probable cause. The reasonable ground required does not consist in actual danger. In *Roy* v. *Goings*, 96 Ill. 361, it was said (p. 366): "This does not require that there should be actual danger, or that the proofs should furnish the court, at the time of the trial, with reasonable grounds to decide that there was actual danger. It was sufficient if, at the trial, it appeared that at the time of the taking there was apparent danger, such that a reasonable man *might* in good faith act upon it." All that defendants were required to show was that the mortgagee exercised his judgment in good faith, and not arbitrarily, and acted upon probable cause for believing his debt unsafe and insecure. The court erred both in excluding evidence to show probable cause and also in giving the instruction that defendants were bound to show good cause.

The judgments of the Appellate Court and the circuit court are reversed and the cause is remanded to the circuit court.                    *Reversed and remanded.*